UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                           :
THOMAS MASON, et al.,      :
                           :   Civil Action No.
            Plaintiffs,    :   09-0220-NLH-JS
                           :
            v.             :
                           :   OPINION
THE COCA-COLA COMPANY,     :
                           :
            Defendant.     :
```

**APPEARANCES**:

John W. Olivo, Jr., Esquire
John F. Ward, Esquire
Maureen V. Abbey, Esquire
Michael J. Zinna, Esquire
WARD & OLIVO
382 Springfield Avenue
Summit, NJ 07902

    *Attorneys for Plaintiffs*

Samuel S. Woodhouse, Esquire
THE WOODHOUSE LAW FIRM
260 Peachtree Street, NW, Suite 1402
Atlanta, GA 30303

Jeffrey S. Cashdan, Esquire (pro hac vice)
Asha C. Jennings, Esquire (pro hac vice)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521

    *Attorneys for Defendant*

**HILLMAN, District Judge**

**I.   INTRODUCTION**

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint. For the reasons set forth below, Defendant's Motion will be granted in part and

denied in part.

## II.  BACKGROUND

Plaintiffs, Thomas Mason and Molly E. Adams, filed their Second Amended Complaint on June 29, 2009, alleging counts for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq., negligent misrepresentation, intentional misrepresentation, and unjust enrichment against Defendant, The Coca-Cola Company.  These claims are all premised on Plaintiffs' allegations that Defendant "promoted, advertised and marketed" its product "Diet Coke Plus," despite the fact that it had a misleading label that was in violation of the Federal Food & Drug Administration's ("FDA") rules and regulations. (Second Amended Complaint at ¶ 11.)  Among other things, Plaintiffs allege that "the term 'Plus' connotes a more robust amount of vitamins and minerals in the product when, in fact, that was not the case at all."  (Id. at ¶ 14.)  Defendant now moves to dismiss Plaintiff's Second Amended Complaint.

## III. DISCUSSION

### A.   Primary Jurisdiction

Defendant asserts that this matter should be dismissed because the issues raised fall within the special competence of the FDA.  The doctrine of primary jurisdiction applies where a claim "involves technical or policy considerations which are beyond the court's ordinary competence and within [an

administrative] agency's field of expertise," and requires that the court refer the matter to the appropriate agency.  MCI Telecommunications v. American Telephone & Telegraph, Inc., 496 F.2d 214, 220 (3d Cir. 1974); see also CSX Transp. Co. v. Novoloq Bucks County, 502 F.3d 247, 253 (3d Cir. 2007); MCI Telecommunications v. Teleconcepts, Inc., 71 F.3d 1086, 1103 (3d Cir. 1995).  The doctrine is intended to promote "uniformity and consistency in the regulation of a business entrusted to a particular agency, the utilization of an agency's specialized knowledge and insight gained through experience, and the exercise of administrative discretion in affecting regulatory policy entrusted to an agency."  Ipco Safetely Corp. v. Worldcom, Inc., 944 F. Supp. 352, 356 (D.N.J. 1996).

"[T]he possibility that a conflict may arise if a court were to decide a matter inextricably intertwined with an intensive regulatory scheme requires judicial abstention in such cases."  Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057-FLW, 2008 U.S.Dist. LEXIS 105413, at *8 (D.N.J. Dec. 9. 2008); see also Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 736 (3d Cir. 1983); American Telephone & Telegraph, Inc., 496 F.2d at 220 (finding that doctrine was created to "avoid conflict between the court and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the

agency and the court"). This does not mean that a court must defer to an agency every time a cause of action implicates regulations. See The Business Edge Group, Inc. v. Champion Mortgage Company, Inc., 519 F.3d 150, 154 (3d Cir. 2007). Courts are quite capable of handling issues that can be resolved "using the plain language of the [regulations] and ordinary rules of construction." Id.

Whether the doctrine of primary jurisdiction applies is determined on a case-by-case basis. Global Naps, Inc. v. Bell Atlantic - New Jersey, Inc., 287 F. Supp. 2d 532, 549 (D.N.J. 2003). Although there is "no fixed formula for determining whether the doctrine of primary jurisdiction applied," courts may consider the following factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

Id.; see also Ipco, 944 F. Supp. at 356.

Applying these factors, the Court finds that Plaintiffs' Second Amended Complaint is properly before this Court. At its heart, this case calls for the determination of whether

Plaintiffs received what they bargained for.  Among other things, Plaintiffs allege that they were misled by Defendant's use of the term "Plus" in the name and marketing of its product.  The term "Plus," Plaintiffs allege, connotes increased levels of vitamins and minerals, which the product at issue allegedly lacked.  While the FDA has defined the term "Plus" in its regulations, see 21 C.F.R. § 101.54(e), Court are routinely called upon to apply regulations.  See The Business Edge Group, Inc., 519 F.3d at 154. No technical expertise within the special province of the FDA is necessary for any of the determinations called for in this case. Moreover, there appears to be no risk of inconsistent rulings in this case.  See Torres-Hernandez, 2008 U.S. Dist. LEXIS, at *11 (finding no risk of inconsistent ruling where the regulatory scheme was clear and "either the consumers received the appropriate minutes on the prepaid calling cards, or the converse is true").  Defendant has not identified any pending hearing before the FDA, or imminent ruling, on the issues involved in this case that would give rise to a conflict with the current regulatory scheme.

Defendant relies primarily upon Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222 (3d Cir. 1990) in arguing that the doctrine of primary jurisdiction applies here.  In that case, the Court was called upon to determine whether the defendant's listing of the demulcents in the cough syrup it

5

manufactured as "inactive" on the product's label was false.  Id.
at 230.  However, the FDA had not yet addressed whether
demulcents must be labeled as "active" or "inactive" ingredients
within the meaning of its regulations.  Id.  In the absence of
such guidance from the FDA, the court found that plaintiff's
position "would require [it] to usurp administrative agencies'
responsibility for interpreting and enforcing potentially
ambiguous regulations."  Id. at 231.  In this case, by contrast,
the Court is not being called upon to determine any issues within
the FDA's field of expertise that it has not already addressed.
Accordingly, the Court finds no basis to apply the doctrine of
primary jurisdiction at this time.  See Torres-Hernandez, 2008
U.S. Dist. LEXIS, at *11 ("Primary jurisdiction is an exceptional
doctrine reserved for those technical cases that would conflict
with specific federal regulations or pending agency hearings.")

**B.   Preemption**

Defendant argues that Plaintiffs' claims are preempted by
federal law, and so must be dismissed.[1]  Pursuant to the
Supremacy Clause of the United States Constitution, federal law
may be held to preempt state law where Congress so intends.  See
U.S. Cont., art. VI, cl. 2; Malone v. White Motor Corp., 435 U.S.

---

[1] Plaintiffs moved for leave to file a sur-reply brief to
respond to issues raised about preemption in Defendant's reply
brief.  This motion is granted, and the supplemental submissions
of both parties will be considered.

497 (1978) (explaining that "the purpose of Congress is the ultimate touchstone" of the preemption analysis).  Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose."  Jones v. Rath Packing Co., 430 U.S. 519 (1977).  As such, three forms of preemption have been recognized: express preemption, field preemption, and implied conflict preemption.  Hillsborough County, Fla. v. Automated Med. Labs, Inc., 471 U.S. 707, 713 (1985).

Defendant argues that the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301, et seq., expressly preempts Plaintiffs' claims in this matter.  The FFDCA provides that "no state or political subdivision of any state may directly or indirectly establish under any authority . . . any requirement respecting any claim . . . made in the label or labeling of food, that is not identical to the requirement of Section 343(r)."  21 U.S.C. § 343-1(a)(5).  Defendant argues that Plaintiffs' state claims seek to impose obligations on the labeling of its product Diet Coke Plus beyond those imposed by the FFDCA.  However, the Court does not agree.  The Second Amended Complaint does not allege anything that could be construed as seeking to impose greater or different labeling obligations upon Defendant than the FFDCA.  Rather, Plaintiffs' merely allege that Defendant failed to abide by the federal labeling requirements and, in doing so,

misled Plaintiffs as a matter of state law.  Nothing in the language of the statute expressly preempts a state claim for consumer fraud based on a failure to follow federal labeling regulations.  Thus, express preemption is not appropriate in this case.[2]

Defendant also argues that Plaintiffs' claims are subject to implied conflict preemption.  Implied conflict preemption exists when it is "impossible for a private party to comply with both state and federal requirements." English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990).  "Both federal statutes and regulations have the force of law and can preempt contrary state law." Holk v. Snapple Beverage Corp., No. 08-3060, 2009 WL 2449561, at *8 (3d Cir. Aug. 12, 2009); see also Wyeth v. Levine, --- U.S. ---, 129 S.Ct. 1187, 1200 (2009) ("This Court has recognized that an agency regulation with the force of law can pre-empt conflicting state requirements."); Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 243 (3d Cir. 2008) ("Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have no less preemptive effect than federal statutes . . . .").

_____

    [2] The Court notes that although Defendant argued that field preemption also applied in its moving papers, it conceded in its Reply Brief that this argument is no longer valid in light of the Third Circuit's recent holding in Holk v. Snapple Beverage Corp., No. 08-3060, 2009 WL 2449561, at *8 (3d Cir. Aug. 12, 2009).

Defendant argues that Plaintiffs' claims are preempted because they stand as an obstacle to federal law.  In support of this argument, Defendant asserts that Plaintiffs' allegations focus exclusively on Defendant's use of the term "Plus" in the name and marketing of its product "Diet Coke Plus."  It also points to the fact that the FDA has precisely defined the term "Plus" in its regulations.  See 21 C.F.R. § 101.54(e).  Further, the regulatory scheme created by the FDA specifically addresses the fortification of food and beverages, see 21 C.F.R. § 104.20, and the labeling requirements for relative claims such as "plus," see 21 C.F.R. §§ 101.13(j)(2), 101.54(e)(1)(iii).  Accordingly, Defendant suggests, if the FDA were to determine that it was compliant with these regulations and the Court were to ultimately conclude that it violated the NJCFA, it could not possibly comply with both state and federal law.

As an initial matter, Plaintiff's claims may not be as narrow as framed by Defendant.[3]  Moreover, even if Defendant were to ultimately demonstrate that it is compliant with FDA regulations, such fact would more appropriately serve as a defense to any claim stemming from its use of the term "Plus"

---

[3] Plaintiffs argue in their Sur-Reply that "even if the FDA should reverse itself and send Coke a letter blessing the Diet Coke Plus label, the Plaintiffs can go forward on their existing allegations."  (Pl. Sur-Reply Br. at 5.)  This will likely depend on whether Plaintiffs' allegations go beyond Defendant's use of the term "Plus."  That issue is not before the Court in this Motion, and the Court makes no findings with respect to it.

than a grounds for preemption.  With regulatory compliance serving as a potential defense against any claims based upon the improper use of regulated terms, there can arise no situation in which it would not be possible for Defendant to simultaneously comply with both state and federal law.  Were the Court to permit the application of implied conflict preemption in this case, it would turn regulatory definitions such as 21 C.F.R. § 101.54(e) into suits of armor capable of immunizing parties who mislead the public from any potential civil liability, even before it is determined whether the party complied with the definition. Congress could not have intended such a perverse result when it granted the FDA authority to regulate in this area.  See Malone, 435 U.S. 497 (explaining that "the purpose of Congress is the ultimate touchstone" of the preemption analysis).  Especially in cases such as this, where Defendant is alleged to have been charged with "misbranding" by the FDA for failure to meet the requirements for use of the term "Plus," (see Second Amended Complaint at ¶ 1, Exh. A), and the states have such a historically strong interest in the area, see Plumley v. Massachusetts, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products.").

Defendant also cites to the Third Circuit's recent decision in Holk, asserting that the Third Circuit refused to apply implied conflict preemption because, unlike here, there was no law or FDA regulation defining the potentially misleading term at issue in that case.  (Def. Reply Br. at 9.)  The Third Circuit found in Holk that the FDA had not enacted any regulation or otherwise taken actions capable of having preemptive effect and relied on this fact in determining the implied conflict preemption did not bar plaintiff's claims.  Holk, 2009 WL 2449561, at *10.  However, the Court does not read Holk as standing for the proposition that where a regulation defining a term exists, such regulation standing alone and without more mandates a finding of preemption.  Had such a regulation existed, the Third Circuit would have taken the further step of determining whether it is possible for the defendant to comply with both state and federal requirements.  Id. at *8.  The Court is unable on Plaintiffs' pleadings alone to find that such compliance is not possible in this case.  Whether Defendant is able to demonstrate that it is in compliance with the federal regulations regarding the use of the term "Plus," such that it amounts to a complete defense to any claims that stem solely from the use of that word, the Court leaves to another day.  Until such time as Plaintiffs' claims are clarified and the record further developed, the Court declines to bar any or all of

11

Plaintiffs' claims on the basis of implied conflict preemption.

    **C.   Failure to State a Claim**

        **1.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a Plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim.'"
Bell Atlantic v. Twombly, 550 U.S. 544, 562 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions' . . .
."); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.
2008) (stating that the "Supreme Court's Twombly formulation of
the pleading standard can be summed up thus: 'stating . . . a
claim requires a complaint with enough factual matter (taken as
true) to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary element").
A court need not credit either "bald assertions" or "legal
conclusions" in a complaint when deciding a motion to dismiss.
In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30
(3d Cir. 1997).  The defendant bears the burden of showing that
no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750
(3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926
F.2d 1406, 1409 (3d Cir. 1991)).

Further, claims alleging fraud or mistake must meet the
heightened pleading requirements of Fed. R. Civ. P. 9(b), which
requires such claims to be pled with "particularity."  See
Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494,

13

510 (D.N.J. 2000).  A plaintiff must allege the "who, what, when, where, and how" of the claim.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004).  A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  <u>Id.</u> (quoting <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)).  The Rule's heightened pleading requirements "give[] defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  <u>Naporano Iron & Metal Co. v. American Crane Corp.</u>, 79 F. Supp. 2d 494, 511 (D.N.J. 2000).  In class action cases, each "individually named plaintiff must satisfy Rule 9(b) independently."  <u>Pacholec v. Home Depot USA, Inc.</u>, 2006 U.S. Dist. LEXIS 68976, *4-5 (D.N.J. Sept. 25, 2006).

### 2.    NJCFA

To state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."  <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007).  THE NJCFA defines unlawful conduct broadly, as

[t]he act, use or employment by any person of

> any unconscionable commercial practice,
> deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing
> concealment, suppression, or omission of any
> material fact with intent that others rely
> upon such concealment, suppression or
> omission, in connection with the sale or
> advertisement of any merchandise.

N.J.S.A. 56:8-2.  In other words, "unlawful practices fall into one of three general categories: (1) affirmative acts; (2) knowing omissions; and (3) regulation violations."[4]  Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057-FLW, 2008 U.S. Dist. LEXIS 105413, at *15 (D.N.J. Dec. 9. 2008); see also Frederico, 507 F.3d at 202.

With respect to the first element of Plaintiffs' claim, the unlawful conduct they allege appears to based on affirmative acts by Defendant.  Under the NJCFA, an affirmative representation is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase."  Mango v. Pierce-Coombs, 851 A.2d 62, 69 (N.J. App. Div. 2004).  In their Second Amended Complaint, Plaintiffs allege that Defendant "boast[ed] on the label that the product contained certain attributes, such as 'plus' amount of vitamins and minerals, when such was not true," (Second Amended

---

[4] Only violation of regulations enacted under N.J.S.A. 56:8-4 (West 1960) can serve as a basis for a claim of an unlawful practice under the NJCFA.  See Cox v. Sear Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

15

Complaint at ¶ 33), and that they were "persuaded to purchase the product because the term 'Plus' connotes a more robust amount of vitamins and minerals in the product when, in fact, that was not the case at all," (id. at ¶ 14).  However, the FDA Warning Letter attached to the Second Amended Complaint as Exhibit A specifically provides that the product's

> ingredient list includes the following added vitamins and minerals: magnesium sulfate (declared at 10% of the Daily Value (DV) for magnesium in the Nutrition Facts panel), zinc gluconate (declared at 10% of the DV for zinc), niacinamide (declared at 15% of the DV for niacin), pyridoxine hydrochloride (declared at 15% of the DV for vitamin B6), and cyanocobalamine (declared at 15% of the DV for vitamin B12).

In the face of the FDA Warning Letter's discussion of the added vitamins and minerals in Diet Coke Plus, Plaintiffs have failed to allege with particularity what further expectations they had for the product or how it fell short of those expectations. Without such allegations, Plaintiffs have failed to plead this element with sufficient particularity to state a claim.

With respect to the second element, "[a] sufficiently [pled] ascertainable loss is one with enough specificity as to give the defendant notice of possible damages." Torres-Hernandez, 2008 U.S. Dist. LEXIS 105413, at *19.  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783,

792 (N.J. 2005).  With respect to damages, Plaintiffs allege that
they "have suffered damages and ascertainable losses of moneys
and/or property, by paying money for the product that never
should have been marketed to consumers in a misleading manner."
(Second Amended Complaint at ¶ 33.)  Plaintiffs do not allege,
however, that what they received was of lesser value than what
they were promised.  See Franulovic v. Coca-Cola Company, Nos.
07-539 (RMB) and 07-828 (RMB), 2007 WL 3166953, at *8-9 (D.N.J.
Oct. 25, 2007) (finding that "conclusory statement that she and
other consumers have suffered an 'ascertainable loss' is
insufficient, and dismissing NJCFA claim where the plaintiff
"actually received a beverage for her money, and [did] not allege
how the purchase of that beverage constituted a specific loss");
Solo v. Bed Bath & Beyond, Inc., No. 06-1908 (SRC), 2007 WL
1237825, at *3 (D.N.J. Apr. 26, 2007) (granting motion to dismiss
NJCFA claim where the plaintiff failed to allege that "the sheets
he received were worth an amount of money less than the sheets he
was promised, or that he experienced a measurable out-of-pocket
loss because of his purchase).  Without such allegations,
Plaintiffs have failed to plead this element with sufficient
particularity to state a claim.

With respect to the third element, courts have found
allegations that a plaintiff would not have purchased a product
had it been accurately labeled or that they purchased the product

because of the misleading claim sufficient to plead causation. See Franulovic, 2007 WL 3166953, at *10; Solo, 2007 WL 1237825, at *4.  In the Second Amended Complaint, Plaintiffs allege that they were "persuaded to purchase the product because the term 'Plus' connotes a more robust amount of vitamins and minerals in the product."  (Second Amended Complaint at ¶ 14.)  Accordingly, Plaintiffs have sufficiently pled this element.

Having failed to allege facts with sufficient particularity to state a claim with respect to the first two elements, Plaintiffs' NJCFA claim must be dismissed.  Plaintiffs request in their Opposition Brief that they be permitted to amend their Second Amended Complaint, should the Court find it deficient. The Court will grant this request.  See Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000) (holding that court should generally grant leave to amend a complaint dismissed for failure to state a claim).

### 3.    Misrepresentation

Plaintiffs have asserted claims for both negligent and intentional misrepresentation against Defendant.  In order to state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege: (1) an incorrect statement, (2) negligently made, and (3) upon which plaintiff justifiably relied.  See Alexander v. Cigna Corp., 991 F. Supp. 427, 440 (D.N.J. 1998).  In order to state a claim for intentional

18

misrepresentation under New Jersey law, a plaintiff must allege:
(1) a material misrepresentation of a presently existing or past
fact; (2) knowledge or belief by Defendant of its falsity; (3) an
intention that the plaintiff rely upon the fact; (4) the
plaintiff's reasonable reliance upon it; and (5) resulting
damages.  See Gennari v. Weichart Co. Realtors, 691 A.2d 350, 367
(N.J. 1997).

Plaintiffs allegations regarding these claims are
substantively identical to their allegations regarding the NJCFA
claim, and they must fail for the same reasons.  In the face of
the FDA Warning Letter's discussion of the added vitamins and
minerals in Diet Coke Plus, Plaintiffs have failed to allege with
particularity what incorrect statements or material
misrepresentations were made to them.  For the same reasons
expressed above, Plaintiffs will be given an opportunity to amend
their pleading with respect to these claims.

### 4.   Unjust Enrichment

In order to state a claim for unjust enrichment under New
Jersey law, a plaintiff must allege that: (1) defendant received
a benefit, (2) at plaintiff's expense, (3) under circumstances
that would make it unjust for defendant to retain the benefit
without paying for it.  See In re K-Dur Antitrust Litigation, 338
F. Supp. 2d 517, 544 (D.N.J. 2004).  Further, "[t]he unjust
enrichment doctrine requires that plaintiff show that it expected

remuneration from defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).  However, "New Jersey law does not recognize unjust enrichment as an independent tort cause of action." Torres-Hernandez, 2008 U.S. Dist. LEXIS 105413, at *25.  "Thus, where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed." Id.  In this case, Plaintiffs have not alleged that they expected or anticipated remuneration from Defendant, and their claim appears to sound in tort and not in quasi-contract.  Accordingly, Plaintiffs unjust enrichment count must be dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part and denied in part.  An Order consistent with this Opinion will be entered.


Dated:  June 30, 2010          s/ Noel L. Hillman
                               HON. NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

20